FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

DEVIN R. SCHULTZ,
     Plaintiff,

v.

THE METROPOLITAN GOVERNMENT
OF NASHVILLE AND DAVIDSON
COUNTY, TENNESSEE,
     Defendant.

Case No. 3:26-cv-0590

JUDGE _____

MAGISTRATE JUDGE

_____

JURY DEMAND

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES

Plaintiff Devin R. Schultz, a Tennessee-licensed attorney, proceeding pro se, brings this action against Defendant The Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") and alleges as follows:

### I.    INTRODUCTION

1.    This is a civil rights action under 42 U.S.C. § 1983 to halt Metro's unconstitutional taking of private property to benefit a private developer's commercial interests, enforce a binding recorded contract that Metro itself drafted and recorded, and prevent the imminent destruction of flood-critical and environmentally protected common area owned by The Harpeth Crest Homeowners Association (the "HOA") in which Plaintiff has rights. The 12.2-acre Environmentally Protected Area (the "EPA") at issue contains a protected riparian buffer along a Tennessee Exceptional Water, mature trees that fortify the river bank, and engineered stormwater infrastructure that Metro itself has declared *"required"* for *"the health, safety and general welfare of the residents of Nashville and Davidson County."* (Ex. 1 at 1; *see* ¶ 43.)

2. Metro has authorized and set in motion an imminent and concrete physical invasion or private property without instituting condemnation proceedings or providing any mechanism for just compensation as part of a negotiated transaction with Cypressbrook Company, LLC ("Cypressbrook"), a Texas-based private for-profit developer who stated on the official record that they wanted build infrastructure on HOA's protected property to facilitate their own commercial interests. (*See* ¶ 28-30.)

3. For its part of the transaction, Cypressbrook agreed to convey approximately twenty acres to Metro at no cost and to fund millions of dollars in public infrastructure improvements; in exchange, Metro enacted Bill No. BL2023-1968 (the "Legislation") authorizing Cypressbrook's development and authorizing Cypressbrook to enter onto the HOA's property to extend a paved recreational trail across the EPA in order to make Cypressbrook's development more attractive and more valuable to Cypressbrook's tenants and purchasers. In addition to Cypressbrook's open admission, the transactional nature of this arrangement is documented in the public record. (*See* ¶ 30.)

4. Metro has not initiated condemnation proceedings, and lacks lawful authority to condemn the property for the purposes identified because, among other things, Tennessee statute forbids condemnation for recreational-trail purposes. Tenn. Code Ann. § 29-17-102, so they were left without a lawful avenue to satisfy Cypressbrook's demands to access HOA's property and install its desired infrastructure.

5. Metro's attorney has admitted in official proceedings that no separate written easement agreement exists. (*See* ¶ 33.) Metro relies solely on eight words appearing on the recorded Phase 2 Plat: "Dedicated Conservation/Greenway/Public Access/Trail Easement Area" (the "Trail Easement Reference"), and characterizes that reference as a "conservation easement

given in favor of the Metro Parks Department." (Davidson County Register of Deeds, Instrument PL-20020403 0040556; the "Plat")(Ex. 4)

6. That characterization is self-defeating. Even if such an interest existed, it would, at most, be an easement in gross which cannot perform the appurtenant connecting-and-benefitting function that the trail extension requires.

7. Metro's singular reliance on the Trail Easement Reference is also fatal within the Plat's own four corners: the same Plat Metro invokes, by its own General Notes, prohibits each of the actions Metro mandates. (*See* ¶¶ 36(a), 36(b) and 36(c).)(Ex. 4)

8. The contemporaneously recorded Declaration of Covenants further confirms that any Plat-designated easement runs in favor of the Declarant and the Association, with all third parties expressly excluded. (*See* ¶¶ 37-40.)

9. Even if Metro had an enforceable appurtenant easement - which it does not - it would have no legal grounds to "transfer" such a non-commercial easement right to a private third party that has no rights in or to HOA property for that party's commercial interests. Metro has nevertheless proceeded to authorize Cypressbrook to do exactly that and for exactly those commercial reasons.

10. Cypressbrook has a pending stormwater variance application pending before the Metropolitan Stormwater Management Commission (the "Commission").

11. The variance application intentionally misrepresents to the Commission that Cypressbrook is the owner of the HOA's EPA, upon which Cypressbrook seeks a variance to perform its construction activities.

12. Metro also completely omitted the EPA as an affected parcel in its mailed notification to the public. See Exhibit 12.

13. Cypressbrook and/or Metro also failed to post the required public-notice signs which is a mandatory requirement - each of which Plaintiff has challenged in writing. (*See* ¶¶ 50-52, 59-60, 62.)

14. Plaintiff notified Metro's attorney Hannah Zeitlin of such defects. On April 29, 2026, Metro - through Department of Law attorney Hannah Zeitlin - confirmed in writing that the Commission intends to proceed on the defective application regardless.

15. Cypressbrook's surveyors have already physically entered the EPA without authorization. Surveying is the operational predicate to construction. Without immediate injunctive relief, Metro will proceed with the imminent meeting, the Commission will act on the defective application, Cypressbrook will commence construction, and the North Main Channel, the Harpeth River buffer, and the mature tree canopy will be permanently destroyed. The harm is irreversible and not compensable by money damages.

## II. JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). This action arises under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a). The Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and Federal Rules of Civil Procedure 57 and 65.

17. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2). Metro is located in this District; Plaintiff resides in this District; the property at issue is located in this District; and all relevant events occurred in this District.

18. Plaintiff's federal takings claims are ripe without exhaustion of state remedies. Metro has made final legislative and administrative decisions: BL2023-1968 has been enacted, a

stormwater variance has been pursued and advanced through the Commission notwithstanding Plaintiff's timely written objections, Metro has confirmed in writing that it will proceed with the imminent Commission meeting on the application, and Cypressbrook's surveyors have already entered the EPA. The challenged actions are final and have authorized an imminent physical invasion of property, rendering Plaintiff's federal claims ripe without the need for further administrative process. The Commission has demonstrated through its presiding officers' on-the-record statements that it has prejudged the outcome in Cypressbrook's favor, confirming that continued administrative proceedings are not an adequate remedy.

### III.   PARTIES

19.    Plaintiff Devin R. Schultz resides at 7348 River Bend Road, Nashville, Tennessee 37221, within the Harpeth Crest neighborhood. Plaintiff is the elected President of the HOA and an "Owner" as defined in the recorded Declaration. Section 10.1 of the Declaration expressly confers on each Owner the individual right to enforce all restrictions, conditions, covenants, reservations, liens, and charges affecting HOA property by proceeding at law or in equity. Plaintiff sues in his individual capacity. (Ex.2 at 16.)

20.    Plaintiff has suffered and will continue to suffer concrete, particularized injury from the actions described herein, including: (a) increased personal risk to his home during flooding, which was isolated by flooding in 2010 and 2021 leaving Plaintiff without any means of ingress or egress; (b) permanent loss of his individually enforceable rights in the EPA; (c) diminution of property value; (d) loss of quiet enjoyment; (e) actual trespass upon the EPA by Cypressbrook's surveyors, who entered HOA property without authorization as a direct consequence of the Legislation and Metro's permits and approvals; and (f) the documented burden of repeatedly preparing for, attending, and objecting in writing to Commission proceedings that proceed on a

defective application notwithstanding Plaintiff's timely written objections. These injuries include the imminent and ongoing invasion of Plaintiff's protected property interest in the right to exclude others from the EPA, which is among the most fundamental rights recognized unter the Fifth Amendment.

21. Defendant The Metropolitan Government of Nashville and Davidson County ("Metro") is a consolidated city-county government and political subdivision of the State of Tennessee organized under the Metropolitan Charter. Metro is a "person" within the meaning of 42 U.S.C. § 1983. BL2023-1968 constitutes an official legislative act adopted by Metro Council, the final policymaking authority for Metro. The actions of the Stormwater Management Commission and the Metropolitan Department of Law in implementing, advancing, and ratifying the conduct described herein - including proceeding on a defective variance application over Plaintiff's objections - constitute execution of that policy and independent final policymaking decisions for which Metro is directly liable.

## IV. FACTUAL BACKGROUND

### A. The Harpeth Crest Community and the Environmentally Protected Area

22. Harpeth Crest is a 41-home residential community in west Nashville governed by the HOA. The neighborhood sits within a 180-degree bend in the Harpeth River and is acutely vulnerable to flooding. Flooding events in May 2010 and March 2021 caused substantial property damage and isolated residents - including Plaintiff - without any means of ingress or egress from their homes.

23. The EPA is immediately adjacent to the Harpeth River and serves three distinct and irreplaceable functions:

(a) **Flood mitigation.** The parcel contains a multi-acre engineered Stormwater Management System (Ex. 5), including the North Main Channel – an approximately 360-foot-long, 20-foot-wide, 2.5-foot-deep engineered stormwater conveyance feature running from the engineered detention pond to the Harpeth River - that Metro itself has declared "required" for the "health, safety and general welfare of the residents of Nashville and Davidson County";

(b) **Environmental preservation.** The parcel includes a protected Harpeth River buffer and mature tree canopy; and

(c) **Community open space.** The parcel is reserved for the HOA members' common use and quiet enjoyment under the Declaration.

24. When Harpeth Crest was developed, the recorded Phase 2 Plat designated an 8-foot *unpaved* recreational walking trail within the northern portion of the EPA, forming a self-contained loop that terminates south of the North Main Channel - avoiding any disturbance to the stormwater infrastructure. (Ex. 4)

25. The trail remained unpaved for over a decade after recordation. Sometime in 2013 or 2014, Metro or its agents paved a portion of the existing trail without the HOA's knowledge or consent.

26. No extension of the trail beyond the North Main Channel has ever existed, whether paved or unpaved.

27. Where the Plat's drafters intended to reserve an area for future extension, they expressly did so (a designated future extension area for the cul-de-sac on Morton Mill Road

appears on the Plat). No such designation exists for the trail extension Metro now mandates. (Ex. 4)

### B. Unconstitutional Confiscation Via Legislation

28.     In 2023, the Metro Council enacted BL2023-1968 as the product of explicit negotiations with Cypressbrook. The transactional nature of the arrangement was acknowledged on the public record by Metro Council members. Councilmember Gloria Hausser stated: *"What turned me was [Cypressbrook paying to raise] Coley Davis Road . . . it's not in the Metro Budget to do . . . So when [Cypressbrook] brought that to me and said [they] would raise Coley Davis Road . . . I said 'Oh, well that makes a difference to me. If we can't raise the road - if that's not possible, we don't need to do this [development project].'"*[1] Councilmember Dave Rosenberg stated: *"Additionally, the soccer fields are busting at the seams and we don't have enough, [the] up to 20 acres of additional sports field [that was offered by Cypressbrook to Metro and incorporated into the SP] is huge for all of west Nashville."*[2]

29.     The deal terms were as follows: In exchange for Cypressbrook conveying approximately twenty acres to Metro at no cost and funding millions of dollars in public infrastructure improvements, Metro authorized Cypressbrook's development and authorized, as a condition of that development, Cypressbrook to invade and permanently alter HOA property to install a paved recreational trail across the HOA's EPA because Cypressbrook demanded it to increase the value of their project.

30.     The private commercial purpose of the trail extension was admitted on the record by Cypressbrook's own counsel at official Commission proceedings: *"**My client is building these**

---

[1] Metro Nashville Network, *03/09/23 Planning Commission Meeting*, YouTube (Mar. 9, 2023), https://youtu.be/uCpScDwvvoQ (statement at 2:35:21).
[2] Metro Nashville Network, *03/09/23 Planning Commission Meeting*, YouTube (Mar. 9, 2023), https://youtu.be/uCpScDwvvoQ (statement at 2:44:24).

*things because frankly . . . the greenways are a benefit for their residents. The greenways not only benefit the community at large; they also are attractive for someone trying to - trying to rent or sell the units."[3]*

31.     The Legislation and related site-plan and administrative approvals would authorize Cypressbrook to: (a) permanently destroy the Harpeth River buffer on HOA property; (b) pave over and disturb the North Main Channel and surrounding stormwater infrastructure; (c) remove dozens of mature trees owned by the HOA; (d) install permanent bollards and informational and regulatory signs on the EPA without HOA consent; (e) increase flood and erosion risk without any engineering analysis of those impacts; and (f) create a permanent public thoroughfare across HOA private property, permanently eliminating the HOA's right to exclude.

## C.     The Recorded Plat Is Metro's Sole Claimed Source of Authority - and the Plat Itself Forbids What Metro Mandates

### C.1.     Metro's sole claimed source of authority

32.     Metro's counsel has identified no deed, no separately recorded easement instrument, no condemnation judgment, no contract, and no other written grant of authority entitling Metro to enter, occupy, alter, or authorize any third party to enter, occupy, or alter the EPA.

33.     Metro's own counsel has confirmed during official Commission proceedings that no written easement agreement exists between Metro and the HOA: *"It is correct that there is no express written easement other than the dedication on the Plat, and I consider the dedication on the Plat an easement to [Metro] Parks."[4]*

---

[3] Metro Nashville Network, *09/05/24 Stormwater Management Commission*, YouTube (Sept. 5, 2024), https://www.youtube.com/live/lcDywX8T30A (statement of Cypressbrook counsel at 2:47:37).
[4] Metro Nashville Network, *Stormwater Management Commission Meeting*, YouTube (Sept. 5, 2024), https://www.youtube.com/live/Y4rzz3TNL7A (statement of Metro counsel at 0:44:29).

34.     Metro's counsel has further characterized the Trail Easement Reference as a *"conservation easement that was given in favor of the Metro Parks Department."*[5] The words "Metro," "Metro Parks," and "Metropolitan Government" appear nowhere in the Trail Easement Reference notation or elsewhere on the Plat in connection with that designation. (Ex. 4)

35.     Tennessee statute independently bars Metro from condemning the parcel for recreational-trail purposes. Tenn. Code Ann. § 29-17-102.

### C.2.     The Plat itself prohibits the very conduct Metro mandates

36.     The recorded Phase 2 Plat is the only instrument Metro cites as authority. The Plat, by its own express General Notes, prohibits each of the actions Metro now mandates:

(a)     **River buffer (General Note #14).** The Plat provides that *"[t]he buffer along the waterways will be an area where the surface is left in a natural state and is not disturbed by construction activity."* The proposed trail extension is, by Metro's own description, a construction activity that crosses and disturbs the Harpeth River buffer. (Ex.4, Note 14)

(b)     **Tree protection and clearing limits (General Note #11).** The Plat provides that the property *"shall comply with Ordinance No. 094-1104 (Tree Ordinance)"* and that *"[t]he limits of clearing shall be limited to the areas necessary to construct roadways and utilities to service this site as shown on the final plat."* The Final Plat depicts no roadway or utility within the EPA at the location of the proposed trail

---

[5] Metro Nashville Network, *09/05/24 Stormwater Management Commission*, YouTube (Sept. 5, 2024), https://www.youtube.com/live/lcDywX8T30A (statement of Metro counsel at 2:52:15).

extension. The trees Metro and Cypressbrook propose to remove sit outside any clearing limit the Plat permits. (Ex. 4, Note 11)

    (c)    **Express incorporation of the Stormwater Detention Agreement (General Note #15).** The Plat expressly subjects the EPA to *"the provisions of the Storm Water Detention Agreement"* recorded with the Davidson County Register of Deeds. By that incorporation, the Plat itself imports into the Plat's own text the Stormwater Detention Agreement's prohibition on installation of permanent structures on HOA property without the HOA's written consent. (Ex. 4, Note 15).

**C.3.    The Declaration of Covenants is the Plat's contemporaneously recorded interpretive companion**

37.    The recorded Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Harpeth Crest (Davidson County Register of Deeds, Instrument MA-20020411 0044759)(Ex. 2 at 1.) was recorded by the same Declarant who recorded the Plat, contemporaneously with the recordation of the Plat, and as part of the same recorded chain of title.

38.    Section 1.6 of the Declaration defines the term "Common Areas" to include *"such areas designated as either 'common areas', 'open-space easements' or 'natural buffer easements' on the record plat or plats for the Property . . . constructed for the common use and enjoyment of the Owners."* (Ex. 2. at 3)

39.    Section 9.1 of the Declaration provides that any *"open-space easements"* or *"natural buffer easements"* appearing on the Plat *"are in favor of the Declarant and the Association,"* and that *"no one other than the Declarant, the Association or the Owner on whose Lot is situated an open-space easement or natural buffer easement shall be permitted to have access to, or enter onto, such easement area."* (Ex. 2 at 14.)

40. Read together, these two sections of the Declaration tell us, by the contemporaneous and binding recorded statement of the parties who created the Plat, what the Plat's easement designations mean: they are Common Areas reserved for the common use and enjoyment of HOA Owners, with the Declarant and the Association as the only easement beneficiaries, and with all third parties expressly excluded. Metro is not the Declarant. Metro is not the Association. Metro is not an Owner. (*Id* at 3, 14.) To the extent the Trail Easement Reference creates any cognizable property interest at all (and as set forth in Count VI, it does not), the only construction the recorded instruments themselves permit is one that places the easement in favor of the HOA - not Metro.

**C.4. The Stormwater Detention Agreement is a separate, independent contractual prohibition by which Metro itself is bound**

41. Independent of the Plat and of the Declaration, the recorded Stormwater Detention Agreement (Davidson County Register of Deeds, Instrument 20010712-0074403) is a contractual prohibition by which Metro itself is bound. (Ex.1 at 1.)

42. Metro drafted the Stormwater Detention Agreement on Metro letterhead, executed it through a Metro representative, and recorded it and constitutes by its own terms a covenant running with the land, binding and benefitting Metro, the HOA, and all HOA members, including Plaintiff. (see, *Id).*

43. The Stormwater Detention Agreement's preamble declares the Stormwater Management System on the EPA *"required"* for *"the health, safety and general welfare of the residents of Nashville and Davidson County."* (see, *Id.*)

44. Section 4 of the Stormwater Detention Agreement expressly prohibits Metro from installing permanent structures on HOA property without the HOA's prior written consent. No such consent has been sought or given.

45. Each of the items BL2023-1968 authorizes and directs Cypressbrook to install on HOA property - the paved trail, the fixed bollards, and the informational and regulatory signs - is a permanent structure as defined by Metro Code § 15.64.010. The Stormwater Detention Agreement therefore independently prohibits the conduct Metro now mandates, on a footing entirely separate from the Plat itself, and it does so against Metro by Metro's own contractual undertaking.

46. Metro has never sought or obtained the HOA's written consent to install any permanent structure, pave any trail extension, remove any trees, or disturb the river buffer on the EPA.

47. Plaintiff and the HOA have provided Metro with written notice on multiple occasions that the proposed trail extension violates the Plat, the Declaration, and the Stormwater Detention Agreement. Metro has offered no substantive legal response. (Ex. 6)

**D.      Metro's Procedural Misconduct Before the Commission and Its Decision to Proceed With the Imminent Meeting**

48. The Commission is authorized under Metro Code § 15.64.080 to adopt mandatory rules governing its proceedings. It has done so. The Commission's published rules and mandatory Variance Application Form state in unambiguous terms: "Incomplete Application Submittals Or Complete Applications Submitted After The Noon Deadline Will Not Be Processed."

**D.1      The 2024 Variance and the Prior Defects.**

49. Cypressbrook's pending application is not Cypressbrook's first request to the Commission for a variance authorizing the trail extension. On September 5, 2024, the Commission

considered an earlier Cypressbrook application for a variance to perform the same trail-extension construction on the EPA.

50. In advance of the September 5, 2024 hearing, Cypressbrook failed to comply with the Commission's mandatory public-notice signage requirement - the very same one-sign-per-three-hundred-feet rule that Cypressbrook has failed to satisfy in advance of the imminent meeting.

51. Plaintiff timely notified Metro in writing of the 2024 signage failure by email to Metro counsel Tara Ladd dated August 30, 2024.

52. The Commission nonetheless voted to proceed with the September 5, 2024 hearing notwithstanding the signage failure and Plaintiff's objection. The Commission then granted the variance Cypressbrook requested at that hearing.

**D.2    Expiration of the 2024 Variance and Cypressbrook's "Renewal" Framing.**

53. The 2024 variance subsequently expired by its own terms without Cypressbrook having performed the construction the variance purported to authorize. Subsequently, based on Metro's development tracker site, Cypressbrook has obtained all other permits necessary to commence construction.

54. Cypressbrook's currently pending application is, by Cypressbrook's own characterization in the application materials, a *"renewal"* of that expired 2024 variance - not an application for a new or different variance. Cypressbrook is asking the Commission to restore the same regulatory authorization the Commission previously granted in 2024.

55. That framing materially elevates the imminence of construction. There is no further regulatory step Cypressbrook is awaiting; the "renewal" is the last administrative gate.

**D.3    Current Defects in Pending Application**

56. The Commission's mandatory Variance Application Form requires identification of all parcels affected by or subject to the requested variance, including property addresses, parcel identification numbers, and the owners of all affected properties.

57. On the pending application, Cypressbrook has misrepresented the ownership of the EPA.

58. The HOA's ownership of the EPA has never been disputed. The misrepresentation is deliberate. The omission was made in an attempt to conceal from the Commission the fact that the variance affects another party's property and to deprive the HOA of the procedural recognition Tennessee and Metro law afford to fee-simple owners whose property a governmental body proposes to authorize the alteration of.

59. The Commission's mandatory public-notice rules require one sign per three hundred feet of public road frontage, posted no less than ten days before any hearing. Upon information and belief, and based on Plaintiff's personal inspection of the relevant public road frontages, Cypressbrook has failed to post compliant public-notice signs in advance of the imminent Commission meeting. Cypressbrook previously violated this requirement on prior occasions: on one prior occasion, Cypressbrook's counsel admitted the violation on the record and asked the Commission to proceed; it did. On a second prior occasion, no signs were posted at all. Plaintiff notified Metro's counsel of those prior violations in writing.

60. In addition to the failure to post signs, the formal written Notice of Hearing that Cypressbrook caused to be mailed to community members in connection with the imminent Commission meeting fails to identify the EPA as an affected parcel. The mailed Notice describes the variance application as concerning only Cypressbrook's own development parcel and does not disclose to its recipients that the variance crosses, affects, or proposes any alteration of the HOA's

property. The Notice therefore fails to comply with the Commission's requirement that notice provide a meaningful description of the affected parcels and their owners, and it independently deprives both the HOA (as owner) and the public (as the constituency the notice rules are designed to inform) of fair and meaningful notice of the proceeding.

61.     At a prior Commission hearing, after Cypressbrook had failed to present sufficient evidence to satisfy the Commission's requirements for approval, the Commission did not deny the application. Vice Chair Fulmer instead coached Cypressbrook on how to cure its deficiencies: *"We're mentioning all of these [points where they failed to satisfy their obligations] just to provide a little bit of context for when you come back . . . assuming you want to defer because I don't know if we can take action without documentation that the floodwaters don't rise."* (Ex. 8, ¶ 36.) Commissioner Simpson acknowledged that the Commission possessed sufficient information to deny: *"You can take action because they're supposed to . . . be coming to us providing us that information to make an informed decision. If they haven't provided that, we still can make a determination."* (Ex. 8 , ¶ 37.) The Chair declined to proceed to a vote, stating: *"if we voted, I don't think it would be in favor, currently, right now. So I'd like to give the applicant to do that as it relates to satisfying all of the feedback we've been getting."* The Chairman then turned to the full Commission and openly solicited its members' collective advisory input for Cypressbrook's benefit, asking: *"Are there any other conditional or . . . feedback that we need to have the applicant ensure they focus on?"* The Commission has not extended any comparable guidance, coaching, or advisory assistance to Plaintiff at any stage of these proceedings.

62.     Plaintiff has timely and repeatedly objected in writing to each of the deficiencies described above - the late and incomplete submission, the omission of the HOA and the EPA from the application, the sign-posting failure, and the mailed Notice's failure to identify the EPA.

Plaintiff's written objections have been delivered to Metro's counsel and to the Commission, and Plaintiff has identified each violation by reference to the specific Commission rule it contravenes.

63. On April 29, 2026 - after Plaintiff had objected in writing to each of the foregoing defects - Metro, acting through Department of Law attorney Hannah Zeitlin (and copying Justin Marsh of the Department of Law), confirmed to Plaintiff in writing that Metro and the Commission intend to proceed with the imminent Commission meeting scheduled for May 7, 2026 notwithstanding the application's admitted incompleteness, the deliberate omission of the HOA and the EPA, the sign-posting failure, the mailed Notice's failure to identify the EPA, and the timely written objections Plaintiff has filed. Metro's decision - communicated through counsel and on Metro letterhead - to proceed with the meeting in disregard of Plaintiff's objections is a final municipal policy determination that completes the procedural deprivation alleged herein and triggers the need for emergency relief in this Court.

64. Independent of and in addition to the procedural rule violations, Cypressbrook's variance application is void as a matter of law on a more fundamental ground: the Commission has no legal authority to grant a private developer a stormwater variance authorizing construction on property the developer does not own and over which it holds no legal right to perform the proposed work. A stormwater variance is an administrative authorization - it permits an applicant to perform specified construction or alteration activities within the Commission's regulatory jurisdiction. It cannot create a right of entry where none exists. Cypressbrook holds no easement, deed, license, or any other legal right to enter upon, occupy, or alter the EPA. Even if Metro held a valid easement over that parcel - which it does not - Metro's claimed easement right would belong to Metro, not to Cypressbrook, and Metro cannot transfer its alleged easement rights to Cypressbrook through an administrative variance proceeding. As set forth more fully in Count I

below, the issuance of a variance to a party with no property rights in the burdened parcel further demonstrates that Metro's actions operate as an authorization of physical invasion of private property without lawful basis, because the variance authorizes physical invasion of the owner's property by a third party that has no lawful right of entry.

### E.   Personal Animus Directed at Plaintiff

65.   On March 9, 2023, Plaintiff appeared before the Metropolitan Nashville Planning Commission to present public comment regarding BL2023-1968. Before Plaintiff spoke a single word, and without any prior interaction with Plaintiff, the Planning Commission Chairman publicly called Plaintiff one of the "tricky attorneys" who are not "normal people" and who "abuse the rules." When Plaintiff approached the podium and asked whether those remarks were directed at him, the Chairman looked directly at Plaintiff and confirmed: "that would be you."

66.   The characterization was factually baseless. The Commission's rules are administered, interpreted, and enforced exclusively by the Commission and its staff - including the Chairman. Plaintiff made no attempt, had no opportunity, and was in no position to "abuse the rules." The statement was made before Plaintiff spoke, was directed at Plaintiff solely because he is a licensed attorney defending vested property rights, and was confirmed on the public record. It directly prejudiced Plaintiff's presentation and is part of a broader pattern of hostility directed at Plaintiff and the HOA throughout Metro's administrative and legislative proceedings.

### F.   Cypressbrook's Unauthorized Entry onto HOA Property

67.   Cypressbrook has dispatched surveyors onto the HOA's EPA without the HOA's knowledge, consent, or authorization. Cypressbrook holds no easement, deed, license, or any other legal right of entry. Metro possesses no valid legal authority to authorize such entry. The surveying

activity is the direct and foreseeable consequence of the permits, variances, and site-plan approvals Metro issued and constitutes a completed trespass on HOA property.

68. Surveying is the operational predicate to construction. The presence of surveyors on the EPA confirms that Cypressbrook is in the final pre-construction phase. Without immediate injunctive relief, construction will commence - permanently destroying the North Main Channel, the Harpeth River buffer, and the mature tree canopy - before this Court can adjudicate the merits of Plaintiff's claims. Photographs and other physical evidence of the unauthorized survey activity are described in the supporting Supplemental Affidavit of Devin R. Schultz.

### G. Metro's Unprecedented Treatment of HOA Property

69. In every prior instance in which Metro has sought greenway or recreational-trail access across private or HOA-owned property, Metro has either negotiated and recorded voluntary written easement agreements or initiated formal condemnation proceedings with just compensation. Metro has obtained such written, executed, and recorded easement agreements from other HOAs in connection with comparable trail projects in the immediate area. No such instrument exists here.

70. In no prior instance has Metro: (a) enacted targeted legislation directing a private for-profit developer to physically invade and permanently alter protected HOA common area for the primary benefit of that developer's private commercial project, without condemnation and without compensation; (b) relied on an eight-word plat notation to override recorded restrictive covenants and a recorded stormwater contract Metro itself drafted; (c) overridden its own mandatory procedural rules to facilitate a single private developer's approvals over the timely written objections of the affected property owner; (d) confirmed in writing - through its own Department of Law and after timely written objections - that it would proceed with a Commission

meeting on a defective application; or (e) through its Commission members - and specifically through the Chairman's on-the-record solicitation of the full Commission's collective advisory assistance for Cypressbrook's benefit - actively coached an applicant on how to cure application deficiencies and obtain approval, while denying the affected property owner any comparable guidance or procedural accommodation. This treatment has no rational basis and serves no legitimate governmental purpose.

## V.    CAUSES OF ACTION

### COUNT I
### UNCONSTITUTIONAL TAKING
### (Fifth and Fourteenth Amendments; 42 U.S.C. § 1983)

71.    Plaintiff incorporates all preceding paragraphs by reference.

72.    At no time has Metro initiated condemnation proceedings or provided any avenue for the payment of just compensation.

**A.  Per Se Physical Taking - Authorization Through the Legislation.**

73.    Metro's enactment of the Legislation and its related administrative actions authorize a permanent physical invasion of the EPA by Cypressbrook and its tenants, including construction of a paved trail, installation of fixed bollards and signs, removal of mature trees, destruction of the Harpeth River buffer, and disturbance of critical stormwater infrastructure. A government-authorized permanent physical occupation of private property - including authorized third-party occupation - is a per se taking. The taking has commenced: Cypressbrook's surveyors have already physically entered the EPA without authorization, as the direct consequence of Metro's permits and approvals. No just compensation has been offered or paid; no valid easement, condemnation judgment, or other lawful property interest supports Metro's actions.

### B. Per Se Physical Taking - Issuance of a Stormwater Variance to a Non-Owner.

74.     Metro's issuance (or imminent issuance) of a stormwater variance to Cypressbrook authorizing physical alteration of the EPA - property in which Cypressbrook holds no easement, deed, license, or other legal right of entry - is itself an unconstitutional per se taking. A government grant of authorization permitting a third party to enter, occupy, or physically alter another's land is the paradigm authorized physical invasion. The variance does not, and cannot, supply Cypressbrook with property rights it lacks: a stormwater variance is a regulatory authorization for an owner of the property on which the variance is sought - and cannot be used to circumvent condemnation proceedings. The taking is complete when Metro grants the variance to a non-owner; it does not depend on Cypressbrook's subsequent execution of the activities the variance purports to authorize, and it is independent of any defect in the Commission's procedural rules and of whether Metro itself holds any easement.

### C. Per Se Physical Taking - Even If Metro Held a Valid Easement, Metro Cannot Authorize Cypressbrook's Physical Invasion of HOA Property for Cypressbrook's Private Benefit.

75.     Even assuming *arguendo* that Metro holds the easement it claims, Metro's authorization of Cypressbrook's physical invasion of the EPA - under color of that claimed easement and for Cypressbrook's private commercial benefit - is itself a per se physical taking under the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983. The federal claim does not turn on whether Metro has an easement at all; it turns on the constitutional principle that a government-authorized physical invasion of private property by a third party is a per se taking, regardless of the legal vehicle the government uses to authorize it. Metro's claimed easement, if it existed, would supply Metro with rights of certain limited scope. It would not supply Metro with the power to delegate or sublicense to a third party (Cypressbrook) the right to enter, occupy, and physically alter HOA property for the third party's private commercial benefit. The scope of any

easement is fixed by its terms and purpose, and an easement holder cannot expand the easement to authorize uses beyond what the easement permits or to confer benefits on strangers to the easement. Cypressbrook is not a beneficiary of any conservation easement Metro claims to hold; Cypressbrook is a private for-profit developer whose only interest in the EPA is Cypressbrook's commercial interest in connecting its development to HOA property in order to enhance the rental and sale value of those units. (*See* ¶¶ 28, 30.)

76. Even on the most generous construction of Metro's easement claim, the trail extension Metro authorizes does not serve any conservation purpose recognized by Tenn. Code Ann. § 66-9-302; it instead requires the destruction of the Harpeth River buffer, the removal of dozens of mature trees, and the paving over of engineered stormwater infrastructure on HOA property. Authorizing a third party's invasion to perform the opposite of the easement's statutory purpose, for that third party's private commercial benefit, exceeds any cognizable scope of any cognizable easement. Metro's authorization of that invasion is not a permissible exercise of an easement; it is the appropriation of the HOA's right to exclude Cypressbrook from HOA property - and the right to exclude is the very right the Fifth Amendment protects against authorized invasion.

77. Metro's actions have authorized and made inevitable a physical invasion of the property, as evidenced by actual unauthorized entry and imminent construction activity, regardless of any subsequent execution by Cypressbrook. The authorization may take many forms: the Legislation, the stormwater variance, a site-plan approval, or simply Metro's assertion that Cypressbrook is entitled to enter under color of Metro's claimed easement. Whatever the vehicle, the constitutional injury occurs when the government authorizes a third party to invade private property for that third party's benefit, without the owner's consent and without compensation.

**D. Regulatory Taking (in the Alternative).**

78.    In the further alternative, Metro's Legislation and related approvals effect a regulatory taking by eliminating all economically beneficial and permitted uses of the parcel, imposing permanent obligations not reciprocally borne by Metro or any other party, and destroying the investment-backed expectations of the HOA and its members.

79.    Plaintiff, as an Owner with individually enforceable rights in the EPA under Section 10.1 of the Declaration, has suffered and will suffer concrete, irreparable injury: increased flood risk to his home, permanent destruction of stormwater infrastructure protecting his neighborhood, diminution of property value, and permanent loss of common-area rights. These injuries cannot be undone and have no adequate remedy at law.

## COUNT II
### SUBSTANTIVE AND PROCEDURAL DUE PROCESS
### (Fourteenth Amendment; 42 U.S.C. § 1983)

80.    Plaintiff incorporates all preceding paragraphs by reference.

81.    **Protected Property Interests.** Plaintiff holds constitutionally protected property interests in the EPA arising from (a) his status as a fee-simple homeowner within Harpeth Crest, conferring individually enforceable rights in HOA Common Areas under Declaration § 10.1; (b) his vested rights under the recorded Plat pursuant to Tenn. Code Ann. § 13-4-310(j); (c) his rights as an intended third-party beneficiary of the Stormwater Detention Agreement, and (d) the fundamental right to exclude others. These are vested property rights secured by recorded instruments and Tennessee statute.

82.    **Substantive Due Process.** Metro's conduct is arbitrary, capricious and without legitimate governmental purpose. Metro has (i) authorized the physical invasion of the EPA by Cypressbrook without any valid legal basis, (ii) acted in direct contradiction of its own recorded

contractual obligations set forth in the Stormwater Detention Agreement, (iii) advanced private commercial interests rather than public purposes, and (iv) disregarded known legal defects in the approval process. Such conduct exceeds legitimate regulation and constitutes abuse of governmental power.

83. **Procedural Due Process.** Metro has deprived plaintiff of property interests without constitutionally adequate procedures. The Stormwater Commission (i) accepted an incomplete and defective application, (ii) failed to provide meaningful notice of affected property, (iii) proceeded despite known procedural violations, and (iv) demonstrated a lack of neutrality.

84. Under the balancing framework set forth in *Mathews v. Eldridge*, Plaintiff's private property interests are substantial; the risk of erroneous deprivation is extreme given the Commission's acceptance of a defective application and lack of neutrality; and the governmental interest in does not justify departure from mandatory procedural safeguards.

85. Metro's decision to proceed despite known defects constitutes a completed procedural deprivation, and Plaintiff faces imminent and irreparable harm for which there is no adequate remedy at law.

**COUNT III**
**ANTICIPATORY BREACH OF CONTRACT**
**(Supplemental State Claim; 28 U.S.C. § 1367)**

86. Plaintiff incorporates all preceding paragraphs by reference.

87. The Stormwater Detention Agreement is a valid, enforceable contract between Metro and the HOA running with the land (Davidson County Register of Deeds, Instrument 20010712-0074403). As established in § IV.C.4 (¶¶ 41-46), Metro drafted, executed, and recorded the Agreement. Plaintiff is an intended beneficiary.

88.     The Stormwater Detention Agreement expressly prohibits Metro from installing "permanent structures" on HOA property without the HOA's written consent. No consent has been given.

89.     Metro has violated, and continues to threaten violation of, each of the independent restrictions established in § IV.C above, including Plat General Notes #11 (tree removal), #14 (riparian buffer), and #15 (Stormwater Detention Agreement prohibition on permanent structures), and Declaration §§ 7.1, 8.3(G), and 8.3(P).

90.     Metro has taken definitive actions inconsistent with its contractual obligations including (i) the enactment of BL2023-1968 authorizing prohibited construction, (ii) advancing approvals necessary for such construction, and (iii) confirming its intent to proceed despite objections. These actions constitute a clear and unequivocal intent not to perform. This is anticipatory repudiation under Tennessee law, and it threatens the functionality of the very stormwater infrastructure Metro declared *essential* to public safety.

91.     Metro's anticipatory repudiation threatens the functionality of the Stormwater Management System, increases flooding risk, and the permanent alteration of protected property. These harms are irreparable and have no adequate remedy at law.

## COUNT IV
## EQUAL PROTECTION - CLASS-OF-ONE
### (Fourteenth Amendment; 42 U.S.C. § 1983)

92.     Plaintiff incorporates all preceding paragraphs by reference.

93.     **Similarly Situated Comparators.** In every prior comparable instance Metro has either negotiated and recorded a voluntary written easement or initiated formal condemnation with just compensation, including in connection with comparable trail projects involving other HOAs in the immediate area. No such instrument exists here.

94. **Differential Treatment Without Rational Basis.** Metro has intentionally treated Plaintiff and the HOA differently from every other similarly situated property owner, without rational basis, as documented in § IV.G (¶¶ 69-70). Metro's actions violate its own recorded covenants and contracts, contravene Tennessee statute, increase flood risk in direct contradiction to Metro's own public-safety declarations, and serve predominantly private rather than public purposes. No rational basis supports this differential treatment.

95. **Class-of-One; Personal Animus.** In the alternative, Metro's differential treatment was motivated by illegitimate personal animus directed at Plaintiff individually. The on-the-record demonstration of personal animus by the Planning Commission Chair, and confirmed directly to Plaintiff when he inquired, independently satisfies the class-of-one standard. (*See* ¶¶ 65-66.)

96. These violations have caused permanent loss of vested property rights, diminution of property value, increased flood risk, loss of quiet enjoyment, and the documented burden of repeatedly objecting to Commission proceedings that proceed regardless of objection.

## COUNT V
## DECLARATORY JUDGMENT - PROPERTY RIGHTS, NO VALID EASEMENT, AND QUIET TITLE
### (28 U.S.C. § 2201; Tenn. Code Ann. §§ 13-4-310(j), 29-14-101, 66-9-303)

97. Plaintiff incorporates all preceding paragraphs by reference.

98. An actual, justiciable controversy exists between Plaintiff and Metro regarding (a) whether the HOA's vested property rights under the recorded Plat and Declaration preclude the conduct Metro now mandates and (b) whether Metro holds any valid easement or other property right in the EPA sufficient to authorize that conduct. Metro has claimed on the record that it holds a conservation easement based solely on the Trail Easement Reference. Metro has identified no

other source of authority, and Metro's own counsel has confirmed that no written easement agreement exists. (*See* ¶ 33.)

99. **Vested Property Rights.** Under Tenn. Code Ann. § 13-4-310(j), the recorded Plat vested indefeasible property rights in the HOA and its members, including the right to use and preserve the EPA in strict accordance with the Plat's express terms - including the prohibitions on river-buffer disturbance, unauthorized tree removal, and installation of unapproved permanent structures. The Declaration independently establishes valid and enforceable restrictions on the EPA, including § 7.1 (unapproved structures), § 8.3(G) (drainage-channel obstruction), § 8.3(P) (alteration of Common Property without Association approval), and § 3.3 (any easement holder remains subject to Association rules).

100. **The Trail Easement Reference Fails to Create Any Easement.** The Trail Easement Reference does not create a valid conservation easement under Tenn. Code Ann. § 66-9-303 because it identifies no holder or beneficiary, contains no words of grant, describes no rights, permitted uses, or limitations, and establishes no limitations on the HOA's conduct. The express purpose of a conservation easement under Tennessee law is that the *"protection of the state's land, water, geological, biological, historical . . . and scenic resources is desirable for . . . maintaining and preserving the state's natural and cultural heritage."* Tenn. Code Ann. § 66-9-302 - directly antithetical to the destruction Metro has authorized. The Reference equally fails as a common-law easement: it identifies no grantor, no grantee, and no dominant estate to which any easement could attach.

101. **Even Accepting Metro's Specific Theory, Any Cognizable Conservation Interest Would Be an Easement in Gross That Cannot Authorize the Trail Extension.** Metro's specific characterization of its claimed authority is a "conservation easement that was given in

favor of the Metro Parks Department" arising from the Trail Easement Reference. (*See* ¶ 34.) Even taking that characterization at its highest, Tennessee law forecloses the use Metro proposes. Tennessee recognizes two broad classes of easements - easements appurtenant and easements in gross. *Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 588 (Tenn. Ct. App. 2005). There is no dominant estate here. Any easement would therefore be, at most, an easement in gross. An easement in gross does not run with adjacent land, does not benefit any dominant estate, and cannot perform the connecting-and-benefiting function that defines an easement appurtenant. Metro's proposed trail extension performs exactly that appurtenant function: it would extend the existing self-contained trail loop across the entire EPA, beyond the North Main Channel where the trail has never reached, and connect to Cypressbrook's adjacent development parcel for the admitted purpose of enhancing the rental and sale value of that parcel's apartment units. (*See* ¶ 30.)

102.    **Statutory Purpose Independently Forecloses Metro's Use.** The Conservation Easement Act's stated purpose is that the *"protection of the state's land, water, geological, biological, historical . . . and scenic resources is desirable for . . . maintaining and preserving the state's natural and cultural heritage."* Tenn. Code Ann. § 66-9-302. The trail extension Metro mandates would destroy the Harpeth River buffer, remove dozens of mature trees, and pave over engineered stormwater infrastructure on the EPA. That is not maintenance or preservation of natural heritage; it is the destruction of natural heritage. A claimed conservation easement cannot lawfully be used to accomplish the opposite of the statutory purpose for which the conservation-easement framework exists.

103.    **Even if the Reference Created an Interest, the Plat Itself Defeats Metro's Reading.** Even if the Trail Easement Reference created any cognizable interest, Metro's authority claim fails on the Plat's own four corners. As established in § IV.C.2 (¶ 36), the same Plat Metro

invokes - by its own General Notes #11, #14, and #15 - expressly prohibits each of the actions Metro now mandates. A plat cannot grant authority to do what its own provisions forbid.

104. **The Declaration Confirms That Any Plat-Designated Easement Runs in Favor of the HOA, Not Metro.** As established in § IV.C.3 (¶¶ 37-40), the Declaration - recorded by the same Declarant contemporaneously with the Plat - is the authoritative interpretive instrument that fixes the meaning of the Plat's easement designations. Under Declaration §§ 1.6 and 9.1, any Plat-designated easement constitutes a Common Area held for HOA Owners, with the Declarant and the Association as the only beneficiaries and all third parties expressly excluded. (Ex. 2. at 2, 14) Metro is not the Declarant, the Association, or an Owner.

105. **Metro's legally unfounded easement claim creates a cloud on the HOA's title**. Plaintiff seeks declaratory relief and quiet title as set forth in the Prayer for relief below.

## COUNT VI
## ULTRA VIRES; UNCONSTITUTIONAL TAKING - STORMWATER COMMISSION PROCEEDINGS AND IMMINENT MEETING
## (28 U.S.C. § 2201; Fifth and Fourteenth Amendments; 42 U.S.C. § 1983; Supplemental State Claims)

106. Plaintiff incorporates all preceding paragraphs by reference.

107. The Commission's mandatory rules - authorized under Metro Code § 15.64.080 and published on Metro's official website and Application Form - required Cypressbrook's application to be complete and received by the April 8, 2026 noon deadline, or it "will not be processed." Cypressbrook's application was admittedly incomplete at submission and remained incomplete after that deadline; Commission Counsel Hannah Zeitlin's April 29, 2026 email confirmed that Metro was still voting on the application on May 7, 2026. The Commission's acceptance and scheduling of the application over Plaintiff's timely written objection exceeds the Commission's lawful authority and constitutes an ultra vires act.

108. Independent of the deadline violation, the Commission proceeded upon an application that deliberately omits the HOA as the owner of the EPA - in an attempt to conceal from the Commission that the variance affects another party's property. On information and belief, Cypressbrook failed to post the Commission's mandatory public-notice signs in advance of the imminent meeting, as it had failed on prior occasions - once admitting the failure on the record, once posting no signs at all. The mailed Notice of Hearing fails to identify the EPA as an affected parcel, depriving both the HOA and the public of fair and meaningful notice of the proceeding. The Commission's prior waiver of the same signage requirement for Cypressbrook in 2024 - granting the 2024 variance over Plaintiff's timely objection - confirms that the current course is an established pattern, not an isolated error. Each of these defects independently exceeds the Commission's lawful authority and constitutes a separate ultra vires act. (*See* § IV.D, ¶¶ 56-60.)

109. The Commission's institutional favoritism toward Cypressbrook - including the Chairman's open solicitation of the full Commission's collective advisory input for Cypressbrook's benefit - demonstrates that the Commission has not functioned as a neutral tribunal at any stage of these proceedings. A Commission whose presiding officer openly recruits fellow adjudicators to advise one party on how to secure approval, while limiting the affected property owner to ten total minutes of presentation with no rebuttal, has abandoned its adjudicative role. This conduct independently deprives Plaintiff of the neutral tribunal that procedural due process requires.

110. On April 29, 2026, after Plaintiff had submitted timely written objections to each of the foregoing defects, Metro - acting through Department of Law attorney Hannah Zeitlin - confirmed to Plaintiff in writing that Metro and the Commission intend to proceed with the imminent Commission meeting scheduled for May 7, 2026 and to consider Cypressbrook's

defective variance application notwithstanding the violations of the Commission's mandatory rules and Plaintiff's objections. Metro's decision to proceed is itself ultra vires under the Commission's mandatory rules and beyond the Commission's lawful authority.

111. The Commission's acceptance and scheduling of Cypressbrook's variance application is also ultra vires on a threshold jurisdictional ground: the Commission lacks authority to grant a stormwater variance to an applicant who holds no legal right to perform the proposed work on the subject property. The stormwater-variance process exists to authorize deviations from stormwater-management standards by parties who have the legal right to perform the work in question. It does not exist - and cannot lawfully be used - to create rights of entry or rights of alteration in favor of a private party that holds no property interest in the burdened parcel. Cypressbrook holds no easement, deed, license, or other legal right to enter upon or alter the EPA. Even under the most favorable construction of Metro's claimed easement, that easement - if it existed - would belong to Metro, not to Cypressbrook. Metro's claimed property right cannot be transferred to or exercised by Cypressbrook through an administrative variance proceeding. A variance granted to a party with no legal authority over the subject property is void ab initio - not merely voidable - because it exceeds the Commission's subject-matter authority.

112. The issuance of a variance to a non-owner is not merely ultra vires; it is also an unconstitutional taking. Metro's confirmation that it intends to proceed with the imminent meeting - at which the Commission is expected to act on the variance - is therefore the predicate for an imminent constitutional injury.

113. Plaintiff seeks declaratory and injunctive relief as set forth in the Prayer for Relief below.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Metro as follows:

**A.      Temporary Restraining Order and Preliminary Injunction**

114.      A temporary restraining order and preliminary injunction pursuant to Federal Rule of Civil Procedure 65, restraining and enjoining Metro and all persons acting in concert with or under its authority, including Cypressbrook, from:

(a)      taking any further action on or affecting the EPA, including additional surveying, staking, clearing, grading, paving, construction, or other physical disturbance, pending final resolution of this action;

(b)      issuing or implementing any additional permits, variances, site-plan approvals, or other authorizations to Cypressbrook or any other party relating to construction activity on or affecting the EPA, pending final resolution of this action;

(c)      holding the imminent Stormwater Management Commission meeting scheduled for May 7, 2026, or any further Commission meeting on, considering, or granting any variance to Cypressbrook relating to the EPA, unless and until Cypressbrook files a fully compliant variance application that (i) identifies the EPA and the HOA as fee-simple owner, (ii) is filed on or before the Commission's applicable mandatory submission deadline with no deficiency waiver, and (iii) complies with all mandatory public-notice requirements - including signage along all required public road frontages and a mailed Notice of Hearing that identifies the EPA as an affected parcel - from the commencement of the refiled application process; and

(d)    in the alternative to subparagraph (c), if any Commission meeting is held in disregard of the foregoing, a declaration that any actions taken by the Commission at any such meeting - including any acceptance, scheduling, consideration, or grant of Cypressbrook's defective variance application - are void ab initio.

### B. Declaratory Relief

115. A declaration that Metro's enactment of the Legislation and its related administrative actions constitute an unconstitutional physical taking of private property without just compensation, and that Metro's issuance (or imminent issuance) of a stormwater variance to Cypressbrook - a party with no easement, deed, license, or other legal right of entry over the EPA - constitutes an independent unconstitutional per se taking, in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983.

116. A declaration that Metro's authorization of Cypressbrook's invasion of HOA property without valid legal authority and in breach of Metro's own recorded contract constitutes an arbitrary deprivation of Plaintiff's vested property rights in violation of substantive due process; and that the Commission denied Plaintiff procedural due process for the reasons set forth in Count II.

117. A declaration that Metro's intentional differential treatment of Plaintiff and the HOA violates the equal-protection guarantee of the Fourteenth Amendment, including under a class-of-one theory.

118. A declaration that the HOA's vested property rights under the recorded Plat and Declaration are valid, enforceable, and superior to any interest Metro claims; that Metro holds no valid easement or other property right in the EPA; that the Trail Easement Reference does not create any valid easement under Tennessee law; that the Plat itself cannot be construed to authorize

the conduct Metro now mandates because the Plat's General Notes #11, #14, and #15 expressly prohibit that conduct; that the Declaration confirms that any Plat-designated easement runs in favor of the Declarant and the Association; and that title to the EPA is quieted in the HOA's favor under Tenn. Code Ann. § 29-14-101.

119.    A declaration that Metro lacks authority to condemn the EPA for recreational-trail purposes under Tenn. Code Ann. § 29-17-102.

120.    A declaration that the Commission's acceptance and scheduling of Cypressbrook's incomplete and untimely variance application, the failure to post mandatory public-notice signs, the mailed Notice of Hearing's failure to identify the EPA as an affected parcel, and Metro's decision to proceed with the imminent Commission meeting on the defective application each independently exceed the Commission's lawful authority and are ultra vires; that any variance issued in those proceedings is null and void ab initio; that the Commission lacks subject-matter authority to grant a variance to a party with no property rights in the burdened parcel; that the issuance of any such variance effects an unconstitutional per se taking; and that, if the imminent meeting is held notwithstanding the relief requested in Section A, any actions taken by the Commission at that meeting are void ab initio.

121.    A declaration that Metro's enactment and administration of the Legislation, and its approval of variances and site plans directing construction on the EPA, constitute an anticipatory repudiation of the Stormwater Detention Agreement; and that Cypressbrook's physical entry onto the EPA constitutes a completed trespass for which Metro bears responsibility.

### C.    Permanent Injunctive Relief

122.    A permanent injunction, following final resolution on the merits, barring Metro and all persons acting in concert with or under Metro's authority from (a) constructing, authorizing,

permitting, or directing the construction of any paved trail extension, bollards, signs, or other permanent structures on the EPA without a valid, legally sufficient written easement obtained by voluntary agreement or condemnation judgment with just compensation paid to the HOA; (b) authorizing or permitting any further surveying, staking, or other pre-construction or construction activity on the EPA without valid authority; (c) disturbing the river buffer or removing trees in violation of the Plat restrictions; (d) initiating any condemnation proceeding directed at the EPA for recreational-trail purposes; and (e) conducting any further Commission hearing on, considering, or granting any variance to Cypressbrook relating to the EPA unless and until Cypressbrook files a fully compliant application meeting the requirements of Section A.

### D.    Damages, Fees, and Additional Relief

123.    Compensatory damages for all harm caused to Plaintiff's vested property interests, including diminution of property value, loss of quiet enjoyment, and documented costs Plaintiff has incurred in identifying Metro's procedural violations and defending his vested property rights; and nominal damages for each constitutional violation alleged herein.

124.    An award of reasonable attorneys' fees and expenses and litigation costs pursuant to 42 U.S.C. § 1988 for all federal constitutional claims on which Plaintiff prevails, in the event Plaintiff retains counsel during the pendency of this action; and costs pursuant to Tenn. Code Ann. § 29-14-101 for Plaintiff's state-law declaratory-judgment claims.

125.    An expedited hearing on Plaintiff's motion for a temporary restraining order and preliminary injunction, retention of jurisdiction by this Court to enforce all relief granted, and such other and further legal and equitable relief as this Court deems just and proper.

35

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable, including all claims for compensatory and nominal damages.

Dated: May 5, 2026

Respectfully submitted,

/s/ Devin R. Schultz

Devin R. Schultz, Pro Se
BPR No. 024696
7348 River Bend Road
Nashville, Tennessee 37221
(615) 720-7838
devinschultz@gmail.com